Good morning, sir. You are Mr. Hanson? Yes, your honor. You may proceed. May it please the court. Brad Hanson here on behalf of Victor Hugo Maldonado. Mr. Maldonado pled guilty to unlawful possession of a firearm. At sentencing, the district court enhanced or effectively doubled Mr. Maldonado's offense level from 14 to 28 for acceptance of responsibility on the basis of erroneous procedural rulings. First, the district court concluded that Mr. Maldonado had two predicate convictions for a felony controlled substance offense as defined in the sentencing guidelines. Those offenses were from Nebraska and Iowa. That had the effect of increasing Mr. Maldonado's offense level from 14 to 24. And then the district court, based on authority from this court, enhanced Mr. Maldonado's guideline offense level from 24 to 28 on the basis of a ruling that he committed another felony offense in connection with his unlawful possession of a firearm. I'll start with the issue of whether Mr. Maldonado had qualifying controlled substance offenses. And to the extent there's time or interest, I'll address the other felony offense issue toward the end. And the issue of whether Mr. Maldonado had controlled substance offense convictions under the guidelines requires careful consideration of the Supreme Court's recent decision in Mathis v. United States. Effectively, there are two steps for this court to take to determine whether the predicate convictions from Nebraska and Iowa constituted controlled substance offenses. The court must determine whether the Nebraska and Iowa statutes of conviction are over-inclusive. And a statute's over-inclusive in this context if it can be violated in such a way that's not a controlled substance offense under the guidelines. The court must also engage in a divisibility analysis or a Mathis analysis at another step and determine whether the statutes of conviction are indivisible or divisible. And it's Mr. Maldonado's position that both the Nebraska and Iowa statutes of conviction are both over-inclusive and indivisible. And therefore, he did not have qualifying controlled substance offenses. If I understand your argument right, you're saying they're over-inclusive because they include offers to sell, is that right? Correct, Your Honor. I couldn't find offers to sell in either of those statutes. What am I missing? You're not missing anything as far as the express text of the statute. Isn't that what you look at? Well you look at that first, Your Honor, but we have an issue where delivery or distribution is defined in both the Nebraska and Iowa statutes as the actual constructive or attempted transfer of a controlled substance. And the question becomes how do you interpret that language? And what I'm saying is I'm analogizing to Nebraska and Iowa state cases to suggest that a Nebraska or Iowa court could find that a mere offer to sell would constitute a fine. Could find but never have. Never has expressly. That's correct, Your Honor. I've cited a number of cases from Nebraska and Iowa in the brief. And if you were to sum up the four Nebraska and Iowa state cases cited in there, they would hold the proposition that merely facilitating a drug transaction could be at least aiding and abetting a controlled substance offense under Nebraska or Iowa law or attempting or something of that matter. And I agree, there's no Nebraska or state, Iowa state case that I could find expressly on point for the proposition that an imagine it wouldn't take much to stretch from those Nebraska and Iowa state cases that are cited to get to the point where you're dealing with a mere offer to sell. So, for instance, if a defendant arranged a sale of drugs, whether or not he or she had possession of the drugs, but his idea was to see who would actually purchase the drugs, didn't actually have a bona fide interest in it, is that that could be enough under the very broad definition of delivery or distribution under Nebraska and Iowa law. And this argument does require consideration of circuit authority from the fifth and second circuits where those circuits have held that an offer to sell is not a controlled substance offense under 4B1.2b. The distinction, of course, is that in the fifth circuit with the Texas statute and in the second circuit with the Connecticut statute, those statutes expressly included an offer to sell in the definition of delivery. And I agree that that's not the case with the Nebraska and Iowa statutes. But for the reasons I mentioned, I think those statutes could be applied in that manner. And it's not just theoretical. I mean, we can't find the case on point. It's very difficult to research state law as the court works. It's sort of theoretical, doesn't it? In a way, it's not. We can't point to a specific instance, but it doesn't require a fantasy or anything like that to apply the statute in that manner when you look at the cases that we were able to find on that subject. So we would submit that this case is very similar to the Hinkle case in the fifth circuit cited in the briefs, the briefs from the fifth circuit as well, and then the second circuit authority as well in the Savage case. Now on the question of divisibility, I think this is actually the easier question after Mathis. And it's difficult to say that divisibility is an easy question, but relative to the question of whether the statutes include an offer to sell, I think that it is in this instance. And for divisibility, you need to look at the text of the statute, of course. That's where you look to state case law. And then if those don't give you a conclusive answer, you can take a peek at the record documents that were submitted as sentencing as Defendants Exhibit C and D. And when you look to that authority, it becomes clear that delivery is indivisible under both statutes, or distribution. They mean the same thing in Nebraska and Iowa law. And what that means is, when you look to the Mathis case, the court says that if there's a factor in a case that needn't be proven beyond a reasonable doubt to sustain a conviction, that it's a means of commission or a simple fact. It's not an element to the crime itself. And the argument here is that there's nothing to suggest either in the statutes or in the case law or if you take a peek at the records, it would suggest that the prosecutors in Nebraska and Iowa were required to prove the means by which Mr. Maldonado delivered or possessed with intent to deliver or conspired to distribute the drugs. Can we go back to the offers to sell? Sure. Is it your contention that offers to sell are encompassed by the term distribution that's used in the statute? Used in the Nebraska and Iowa statutes, correct. The term distribution. Right, right. Well, isn't that the exact term that's used in the generic offense? And if so, why would we interpret them any differently? In Nebraska and Iowa, we have the benefit of, unlike the guidelines, we have the benefit of a separate statute that defines delivery and distribution. And delivery and distribution are defined alike in both Nebraska and Iowa as the actual constructive or attempted transfer of a controlled substance. So that's the prime textual difference between 4B1.2 and the Nebraska and Iowa statutes. And so what about that definition in Iowa and Nebraska suggests that distribution includes offers to sell? That's where you have to look to the case law to determine what Nebraska and Iowa mean by, for example, a constructive transfer or an attempted transfer and answer the question of whether that's broader than we would construe under the sentencing guidelines context. Attempts are specifically included under the guidelines, right? Correct. Okay. Correct. And the question becomes somewhat more difficult when you look specifically at the Nebraska conviction for Mr. Maldonado. He was convicted of an offense that I frankly have never heard of before in the criminal attempt to do there. And even, and I'm not saying you should, but even if you were to engage in a modified categorical analysis and you would look at the Nebraska record documents, it's really not very clear at all what Mr. Maldonado would have had to admit for purposes of that attempted conspiracy to distribute conviction. But as I was saying with respect to divisibility, there is nothing either in the case law or the statutes or a peek at the record documents that would suggest that Mr. Maldonado would have been required to admit the means by which he possessed with intent to deliver or conspired to distribute. The means of delivery is not an element under Nebraska or Iowa law. We don't have the benefit of a good case from Nebraska on point. I would submit that if you just look at the statute, it's pretty clear that it's, it's indivisible. But in Iowa, we have the Williams case that's from the Iowa Supreme Court cited in both parties' briefs, which makes pretty clear that Iowa's Supreme Court has said that the section 124.401 had a different nomenclature back during the Williams case, but that doesn't define multiple offenses. It defines multiple means by which you can commit the same controlled substance offense. Let me, are you familiar with the First and Sixth Circuit cases that suggest that, um, an offer to sell could qualify as a controlled substance offense if it required actual intent and the ability, if the statute, state statute required, actual intent and the ability to sell? Yes, Your Honor. That would be Bryant and Price, I believe. Okay. And so does the Nebraska and Iowa law require the actual intent and ability to sell? Again, it's not clear if you look at the, the definition of delivery or distribution under Iowa or Nebraska law, the actual constructive or attempted transfer, if those states are excluding the, the, the instance in which there's not a bona fide intent to transfer the substance in the end. So, uh, that's our distinction, uh, with the First and the Sixth Circuit cases, and that's why I believe that this case falls a little closer to the Fifth and Second Circuit authority on a, uh, an offer to sell that doesn't have actual intent to, uh, complete the transaction. As I was saying, if, even if you engage in the modified categorical approach, it's not clear from the record materials what exactly Mr. Maldonado admitted in the context of pleading guilty to those Nebraska and Iowa, uh, convictions. So I'd ask the court to find that he was not, he did not have predicate-controlled substance offenses. Uh, briefly, I'll move to the other issue of whether Mr. Maldonado had another felony offense and whether his offense level should have been enhanced by four. This court is bound by the 2014 decision in Walker, and I'm raising the issue primarily to preserve it, uh, for future appeals for Mr. Maldonado. I would ask the court to, to pay careful attention to judge by a separate opinion in the Sanford case explaining how this Iowa carrying weapons offense is, is very unique in that while it is theoretically possible that you could commit the, uh, offense of felon in possession, for example, without committing the carrying weapons offense, it's very, very difficult. Uh, for instance, you can, you commit the Iowa offense of carrying weapons simply if you're armed with a gun. Most of the cases that we get are from, uh, city limits. So, um, there's not really a conceptual difference between carrying weapons and the federal offense to which Mr. Maldonado pled guilty. I would direct the court's attention to the Sixth Circuit's opinion in Kilgore. This is not cited in the briefs, and I can follow up with the 28J if the court deems it appropriate. It's at 749 F. 3rd 463. In that case, the Sixth Circuit dealt with the question of a felon in possession who had stolen a firearm from a police station while doing community service work. Sixth Circuit said it was air to apply the four-level enhancement of that instance because, uh, the possession happened at the same time as the theft, and the Sixth Circuit said that the triggering application for the enhancement must be a separate, must be separate and distinct conduct from the under, underlying offense. So, we have a split here on that issue with the Eighth and Sixth Circuits. I'd simply ask the court to take a look at the issue, and we preserve it for future appeals. And then send us the 28J letter if you would. Very well. Thank you, Your Honor. With the court's permission, I'd say the remainder of my time for rebuttal. Well, before you sit down, I should have said this at the outset. The court thanks both you and the Council of the Government for agreeing to move the case from Friday to today on short notice. We appreciate that very much. You're welcome, Your Honor. We'll hear from the government. Mr. Lammers, good morning. You may proceed. Good morning, Your Honors. Thank you. My name is Jack Lammers. I'm an Assistant United States Attorney in the Northern District of Iowa in Sioux City, and I represent the United States. If I could, Judge Grunder, I would like to cite to a fairly recent opinion that you authored, and it is not cited in my brief. Frankly, I became aware of it yesterday, and I will, with permission of the court, submit a 28J letter. But this is the Fletcher case, and I think it squarely addresses a different offense, but the same context of the categorical approach and how we look at the categorical approach. And in that particular case, and it's a Westlaw site, I can provide that in just a second, it says, the categorical approach requires a realistic probability, not theoretical possibility, that the state would apply its And that's quoting a United States Supreme Court case, I believe it's Gonzalez v. Duanez-Alvarez. And again, further on in the opinion, it says that you have to show that realistic probability that an offender must at least point to his own case or other cases in which state courts did apply the statute in the special manner for which he argues. In this particular case, there is no such authority in the state of Nebraska. There is no such authority in the state of Iowa. And frankly, we don't get past the categorical approach. We never get to the modified categorical approach, and we never get to whether or not the statute is divisible or whether or not the statute is indivisible. Basically, in this particular case, defendant is sort of trying to draw to an inside straight. He says, we'd like you to consider this Fifth Circuit case. We'd like you to consider this statute out of the Fifth Circuit. We'd like you to consider this language out of the case or the statute in the Fifth Circuit that says that a delivery can be committed by a mere offer to sell. The glaring problem, and the problem that you pointed out here, Your Honor, is the fact that the Iowa statute doesn't include that language, the Nebraska statute doesn't include that language, and the courts in Iowa and Nebraska have never so interpreted their statutes, their drug statutes, to reach that. In fact, if you take a look at the Iowa and the Nebraska cases cited in the briefs, they don't encompass conduct that goes to a mere offer to sell. They encompass conduct, for example, I think in the Brown case, they encompass conduct where the defendant stood there, waved down to him, indicating what amount of crack cocaine he had for sale or what amount of crack cocaine he could provide, drove them over, or rode with them over to his supplier to obtain cocaine. That is not a mere offer to sell. That's actively engaging in the process. In the case, I can't recall the name, but I think it's McKinney, or McKinney out of Nebraska, in that particular case, that defendant called her drug supplier to arrange him to come over for a methamphetamine sale so that he could sell methamphetamine to the third person, and she did that in the hopes that she would also be provided with methamphetamine. Again, not a mere offer to sale. She actively participated in the drug transaction. So the burden for the defendant, and the burden that the defendant can't meet, is that there is no law in either Nebraska or Iowa that supports the idea that this drug statute can be accomplished by a mere offer to sell. A further problem that the defendant faces, or a further burden potentially that he has, is there is case law in other districts that include, or in other circuits, that includes offer to sell, and I think, Your Honor, you referenced both of them, the one from the First Circuit and the one from the Sixth Circuit, and in both of those cases there is express language, I think, in the Connecticut statute and perhaps in the Ohio statute, I believe is the other one, that talks about mere offer to sell. But in those particular cases, the circuit said, or the state courts originally said, well, no, it's not just a mere offer to sell. Even though the language is in the statute, they still require intent. And that is required in the Nebraska statute, that's also required in the Iowa statute. And in fact, the Iowa conviction that the defendant has is a possession with intent to distribute. So it actually has an active intent element. So the problem, again, we don't get to the modified categorical approach in this particular case. We don't have to look to whether or not the statute is divisible. We don't have to look to whether or not the statute is indivisible, because, frankly, these statutes, the Iowa statute and the Nebraska statute, closely mirror 4B1.2, the guideline definition of a controlled substance offense. And that's simply where we're at here. I don't believe that the defendant can sort of carry his burden in this particular case to convince this court, or should be able to carry his burden to convince this court, that you should look to guidance out of the Fifth Circuit on a statute that has language that does not exist in the other two statutes and invalidate the prior convictions. If, however, this court were so inclined, and we did get to the question of whether or not these Iowa statutes and Nebraska statutes would somehow sweep too broadly and would encompass, potentially, a mere offer to sell, I believe you do get to use the modified categorical approach here, because these statutes are, in fact, divisible. And in Nebraska, that question is answered directly by, I believe it's the State v. Brown case, which says that these are separate offenses. And I think that in the context of the State v. Brown case, there was a double jeopardy objection, because the defendant was convicted of two crimes based on the same conduct. And the Supreme Court, or Nebraska Supreme Court, said, no, there's no double jeopardy problem here. And, in fact, quotes the district court, who says, he's convicted of distinct crimes. They are the delivery and the, I don't recall if it was delivery or possession with intent or delivery and manufacture. Nebraska said those were distinct crimes. So that statute would be divisible. The Iowa statute is also divisible, and the court can look at the charging documents here under the modified categorical approach, because there are different ways to violate the statute. The statute, frankly, counsel would have a strong argument if Iowa had a statute, I believe it's 124.401, if they had 124.401A, which was manufacture, and then 124.401B, which was possession with intent, and 124.401C, which was delivery. And if we focus simply on that statute for delivery, you might be able to say, not divisible, because it doesn't matter how it's delivered, then it's a means, not an element. But instead, Iowa statute is 124.401, and it criminalizes the conduct of manufacture, it criminalizes the conduct of distribution, delivery, it criminalizes the conduct of possession with intent. And there are separate jury instructions for how those statutes are, in fact, violated. And manufacture and delivery, pretty much similar, or virtually identical. All you do is you change the statute. Possession with intent has elements, or at least an element, that manufacture and delivery do not. So, based on that, the statute is, in fact, divisible. And I'm assuming that counsel would, or the defendant, not counsel, I'm assuming the defendant would want the statute to be divisible because it carries different penalties. For example, possession with intent to distribute marijuana is a five-year sentence. Possession with intent to distribute methamphetamine, 10. Cocaine, 10. They carry different penalties. So you would certainly want to see, I guess, a different element or different penalties if you are the defendant and you're being charged with possession with intent to distribute marijuana. So, we don't get to whether the statute is divisible or not, because categorically these are controlled substance offenses. If we do get to that, the statutes are, in fact, divisible, and the court can look at the And I would point out, if I could, some language, I believe, that came up in Mr. Hansen's argument to your honors, could be, was used, akin to, it's not much of a stretch to. That shows sort of the heavy lift. That shows that this court has to make this leap, that this statute that's never been interpreted by the court has to somehow cover this mere offer to sell. So, if I could, then, I'd simply like to address the second issue, and I'll be brief. I believe that this court is bound by the Walker decision. I don't believe this panel can overturn that decision. I understand counsel is preserving or asking to preserve the record, potentially, for en banc review. I would simply point out that it is not, in fact, impossible to commit the offense as described. If, for example, in this particular case, Victor Maldonado was in possession of a handgun but never left his house, he wouldn't get a four-level increase because he wouldn't have violated the underlying statute. So, it's not a theoretical or a impossibility to violate the Iowa statute at the same time that you have violated the felon in possession statute. So, unless there are questions, I would request that this court uphold the district court's judgment and determine that both convictions qualify as predicate offenses and uphold the district court's sound judgment. Very well. Thank you. Thank you, Your Honors. Your Honors, with respect to the divisibility question, I would direct the court to look at the Iowa jury instructions that are cited in the government's statute, I believe at pages 24 to 25. And whereas there may be some difference if a defendant's convicted of a marijuana offense relative to a methamphetamine offense, there is no difference, and it's clear from looking at the jury instructions, if a defendant is convicted of a mere offer to sell as a form of delivery or something more direct, an actual transfer of a controlled substance. That's why the precise means of delivery in both Iowa and Nebraska is a means or a fact. It's extraneous. It's not an element. And that's why the statute is indivisible with respect to delivery. On the court's recent opinion in Fletcher, I've read it as well on the issue of Nebraska terroristic threats. And the distinction here is that the Nebraska Supreme Court has spoken with some authority as to what a crime of violence is in the state of Nebraska, and has actually enumerated offenses such as murder and armed robbery and kidnapping, I believe, to be crimes of violence under that statute, and thus to serve as a basis for terroristic threats. Here, we don't have that limitation under either Iowa or Nebraska law as to what delivery might mean, and there's no limiting principle. So for these reasons, I'd ask the court to reverse the district court and to remand for both sides for the argument. The case is now submitted, and we will take it under consideration.